UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DUANE HICKMAN,<br><br>        Petitioner,<br><br>    v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        Respondent. | No.  2:18-cv-02967-KJM-CKD P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

      Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2016 conviction for multiple counts of kidnapping, forcible rape, and forcible oral copulation.  Petitioner was sentenced to 100 years to life in prison, plus a determinate term of 11 years, eight months. Petitioner claims that (1) the prosecutor knowingly presented false testimony during trial, (2) there is insufficient evidence to sustain his conviction, and (3) the record does not support concurrent sentences for rape (count five) and oral copulation (count six).  After careful review of the record, this Court concludes that the petition should be denied.

II. Procedural History

      On October 6, 2016, a jury found petitioner guilty of multiple counts including kidnapping to commit rape, kidnapping a child under 14, forcible rape, forcible oral copulation, and criminal

1

threats. (ECF No. 14-2 at 2-8.) The trial court sentenced him to an indeterminate term of 100 years to life plus a determinate term of 11 years eight months in state prison. (Id. at 46-53.)

Petitioner appealed to the California Court of Appeal. (ECF Nos. 14-7 to 14-9.) The state appellate court affirmed the judgment. (ECF No. 14-10.) He subsequently filed a petition for review in the California Supreme Court, and the court denied the petition. (ECF No. 14-11 & 14-12.)

Petitioner filed a state habeas petition in the Superior Court of Sacramento County. (ECF No. 14-13.) The state court denied the petition. (ECF No. 14-14.) He filed a subsequent state habeas petition in January 2019, which the state court denied as successive. (ECF Nos. 14-15 & 14-16.) Petitioner filed a state habeas petition before the California Supreme Court, which it summarily denied. (ECF Nos. 14-17 & 14-18.) He later filed a one-claim state habeas petition before the California Supreme Court to exhaust his claim, which was also denied. (ECF Nos. 35-1 & 35-2.)

With leave of court, petitioner filed his second amended habeas petition in March 2020. (ECF No. 30.) Respondent answered the petitioner. (ECF Nos. 14, 33 & 35.) Petitioner filed a traverse. (ECF No. 36.)

III. Facts[1]

After independently reviewing the record, this Court finds the appellate court's summary of the facts accurate and adopts it herein.[2] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In May 2015, an older sister (born April 1999) and a younger sister (born December 2001) lived with their mother. On May 16, 2015, defendant was tasked with taking the sisters to a birthday party at a skating rink. Defendant knew their mother, and the sisters had met him the day before. But after driving to various locations, a man named Andre dropped defendant and the sisters off at a house

---

[1] The facts are taken from the opinion of the California Court of Appeal, a copy of which was lodged by respondent as ECF No. 14-10.

[2] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing evidence).

unknown to the sisters. A man named Delaney was at the house.

The sisters were scared and wanted to run away, but they did not know where they were. Their phones were not working, so the older sister asked defendant if she could use his phone to call their mother. Defendant told them his phone was also not working.

Defendant and Delaney took the sisters to a bedroom in the back of the house. Defendant gave the younger sister a computer and told her to look for clothes and shoes. The younger sister gave the computer to the older sister, who contacted her mother on Facebook. The mother asked if they were having fun. When the older sister replied they were not, her mother instructed her to tell defendant to take them home. The older sister told defendant to take them home, but defendant did not comply. Defendant and Delaney eventually went outside through a door leading to the backyard. The sisters tried to leave the room through the door to the rest of the house, but it was locked.

Defendant and Delaney returned after about 20 minutes. Defendant asked the older sister to go outside and help him look for something. The older sister agreed and asked the younger sister to accompany her, but defendant did not allow the younger sister to come with them.

In the backyard, defendant pushed the older sister into a shed that was about 10 steps from the house. Defendant also entered the shed and tied the door shut with string. The older sister and defendant sat on a couch in the shed, and the older sister said she wanted to be with the younger sister. Defendant held the blade of an open pocketknife to her neck, and using a mean voice, told her she was going to give him what he wanted or he would kill the sisters. The older sister started crying and defendant told her to "[s]hut the fuck up and be quiet." He asked her age and she said she was 16.

Defendant pushed the older sister onto her back and pulled down her pants. As she screamed for him to stop, defendant covered her mouth with his hand and raped her. He then directed her to put on her clothes. When the older sister tried to leave the shed, defendant grabbed her by the hand and pulled her back down. He told her she could not tell anyone or he would kill her family. He made her look him in the eye and say okay.

They returned to the house and the older sister went back to the bedroom. The younger sister saw that she was scared and thought she had sustained physical harm. The older sister told the younger sister defendant raped her.

About 20 minutes later, defendant told the older sister to come outside with him. When the younger sister said she wanted to go as well, defendant told her to "[s]top acting like a fucking baby." The younger sister stayed in the room with Delaney, who was falling asleep. She was very scared.

Upon leaving the house, defendant grabbed the older sister by her

waist and pulled her into the shed again. He pushed her onto the couch, pulled down her pants, and raped her a second time. When she said she did not want to do this, defendant told her he did not care. When he finished, defendant told her to put on her clothes, which she did, and he wrapped the two of them in a blanket. He told her he loved her and she could not be with anyone else. Defendant said he would bring her a cell phone the next day, and he would hurt her if she did not answer when he called. If she talked to another guy, defendant would shoot the guy, and if she told her family or her family told the police, defendant would shoot her family.

The older sister eventually returned to the bedroom, looking even more scared than the first time she returned. The sisters went to sleep next to each other, and Delaney also slept in the room.

When the sisters woke up, they asked Delaney if they could go to the bathroom. Defendant took the older sister to the bathroom and waited outside the bathroom door. After she finished, defendant took the older sister back to the bedroom, walking behind her with his arm around her. He directed Delaney to take the younger sister to the bathroom while he took the older sister outside and again forced her into the shed.

Defendant put the older sister on her stomach and pulled down her pants. He inserted his penis into her vagina from behind and raped her a third time. Defendant then orally copulated her. The older sister tried to kick defendant away, but he put his fingernails into her leg and threatened to break her leg if she kept resisting.

They went back into the house as the sun was rising. The sisters once again slept next to each other, but thirty minutes later, defendant woke them up and told them their ride was coming.

Defendant and Delaney had a violent verbal argument as the sisters sat together on the living room couch.

It spilled outside and involved other people. Eventually police officers arrived at the front door. The older sister told the police she had been raped, and the police arrested defendant.

The results of a sexual assault examination of the older sister were consistent with forced sexual penetration. Defendant's DNA was found on vaginal and cervical swabs, as well as on her underwear.

Testifying on his own behalf, defendant claimed he started communicating with the mother on a dating website, first meeting the older sister when he went to the mother's house. He said he later received the mother's permission to take the older sister out. Andre asked defendant if there was any place he could drop them off so he could run an errand and then pick them back up after he was done; defendant suggested a house and Andre took them there. According to defendant, the sisters did not object or ask to go home. When Andre did not return to the home as promised, defendant and the sisters went inside with Delaney. Defendant claimed he did not know the older sister was a minor, and went to the shed to smoke

4

> methamphetamine with her. He said they started to kiss and eventually engaged in consensual intercourse.
>
> The jury convicted defendant of kidnapping for the purpose of rape (Pen. Code, § 209, subd. (b)(1)—count 1),[] kidnapping of a child under 14 (§ 208, subd. (b)—count 2), forcible rape (§ 261, subd. (a)(2)—counts 3, 4, & 5), forcible oral copulation (§ 288a, subd. (c)(2)—count 6), and criminal threats (§ 422—count 7), and found true kidnapping enhancement allegations (§ 667.61, subds. (d)(2), (e)(1) ). The trial court sentenced defendant to an indeterminate term of 100 years to life in prison, plus a determinate term of 11 years eight months.

People v. Hickman, No. C083678, 2018 WL 3198839, at *1-3 (Cal. Ct. App. June 29, 2018).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court

5

> may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The court looks to the last reasoned state court decision as the basis for the state court's judgment. Stanley v. Cullen, 633 F.3d 852, 859-60 (9th Cir. 2011). Petitioner bears the "burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

V. Petitioner's Claims

 A. Claim One: Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct by knowingly using false testimony in violation of petitioner's due process rights. (ECF No. 30 at 3.) In response, respondent contends that this claim is procedurally barred and meritless. (ECF No. 33 at 12-15.)

As a threshold matter, respondent argues that this claim is procedurally barred. Although procedural issues are often addressed before the merits, they need not be. The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits. Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach

the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."). "Procedural bar issues are not infrequently more complex than the merits issues" and "it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. 2010). Because this claim can be resolved on the merits, this Court declines to decide whether a procedural bar precludes petitioner from obtaining habeas relief.

On the merits, this Court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (establishing the "look through" doctrine in federal habeas cases). Petitioner did not raise this claim on direct appeal. Instead, he raised it for the first time in a state habeas petition, and the superior court rejected the claim.

> Petitioner claims that the prosecution engaged in misconduct when it failed to correct false testimony from A.D. at trial such that A.D.'s prior inconsistent statements made to the investigating officers were not fully presented to the jury. The prosecution has the "basic duty ... to correct any testimony of its own witnesses which it knew ... was false or misleading. [Citations.]" *(In re Jackson* (1992) 3 Cal.4th 578, 595; accord, *People v. Seaton* (2001) 26 Cal.4th 598, 647.) However, Petitioner has not shown that A.D.'s testimony was, in fact, false. Moreover, Petitioner cites to several examples of where A.D.'s inconsistencies and credibility were presented to the jury. Petitioner does not attach any transcripts in support of his claim that this particular inconsistency was not explored on cross-examination. (See *People v. Ervin* (2000) 22 Cal.4th 48, 92 [prosecutor no duty to correct own witness's testimony where inconsistencies explored at length on cross-examination].)

(ECF No. 14-14 at 4.) He raised the claim in a second habeas petition before the superior court, and the court rejected it as a successive petition. (ECF Nos. 14-15 & 14-16.) Petitioner did not include this claim in his first habeas petition before the California Supreme Court. (ECF No. 14-17.) He raised it in a second habeas petition before the California Supreme Court, (ECF No. 35-1), and the court denied it on the grounds that it is successive and "a petition for writ of habeas corpus must include copies of reasonably available documentary evidence." (ECF No. 35-2.) Therefore, this court is tasked with determining whether the last reasoned state court decision was contrary to or an unreasonable application of clearly established federal law or unreasonably

7

determined the facts in light of the evidence presented at trial.  28 U.S.C. § 2254(d).

The state may not use false evidence to obtain a criminal conviction.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  United States v. Agurs, 427 U.S. 97, 103 (1976) (footnotes omitted).  To state a successful claim, petitioner must show that (1) the testimony was false, (2) the prosecutor knew or should have known that the testimony was false, and (3) the false testimony was material.  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003); see also Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc).  A witness testifying under oath commits perjury if the witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).

Here, the state court's rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law.  The state court correctly applied Napue when it stated that the prosecutor has a duty to correct its witness's false testimony.  (ECF No. 14-14 at 4.)  Petitioner argued that in January 2016 interview with Deputy District Attorney Matt Chisholm, the victim said she had no additional information to add to her police statement, but she later testified to additional details like being locked in the back bedroom and being raped while petitioner held a six-inch pocketknife to her neck.  (ECF No. 30 at 3; see also ECF No. 14-13 at 55-56, 62-65; ECF No. 35-1 at 13-21.)  Because of this inconsistency, petitioner claims that the prosecutor knew that the victim's trial testimony was false and failed to correct it.  The state court concluded there was no prosecutorial misconduct because petitioner has not shown that the victim's testimony was false.  (ECF No. 14-14 at 4.)  That determination was objectively reasonable.  At best, the victim offered inconsistent statements; her police interview statement contained less detail than her trial testimony.  But inconsistencies between a witness's trial testimony and prior statements are not sufficient to prove that a witness testified falsely.  See United States v. Bingham, 653 F.3d 983, 995 (9th Cir. 2011) ("Certainly [the witness] made inconsistent statements, but that is not enough for a *Napue* violation."); United States v. Geston,

299 F.3d 1130, 1135 (9th Cir. 2002). Petitioner has not provided additional evidence proving that these statements were false or that the prosecutor knew or should have known them to be false. As the state court noted, these inconsistencies were presented to the jury. Defense counsel cross-examined the victim and an officer about the inconsistencies in the victim's statements and discussed it in closing argument. (ECF No. 14-4 at 61-62, 74-75, 267-68; ECF No. 14-5 at 280-304.) It was within the province of the jury to make a credibility determination about the victim's testimony, and the jury found her credible, having reached a guilty verdict. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Habeas relief is not warranted for this claim.

### B. Claim Two: Sufficiency of the Evidence

Next, petitioner claims that there is insufficient evidence to sustain his conviction for kidnapping for rape and the kidnapping enhancements. (ECF No. 30 at 4.) Respondent argues that the state court's rejection of his sufficiency of the evidence claim was reasonable. (ECF No. 33 at 15-18.)

Petitioner raised this claim on direct appeal, and the state court considered and rejected the claim.

> Defendant next claims there is insufficient evidence of kidnapping to support the kidnapping for the purpose of rape conviction and the kidnapping enhancements.
>
> Aggravated kidnapping occurs when a person kidnaps or carries away any individual to commit rape or another enumerated crime. (§ 209, subd. (b)(1).) The kidnapping is aggravated only "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).) Section 667.61 incorporates the standard for aggravated kidnapping by requiring that "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense...." (§ 667.61, subd. (d)(2); see *People v. Rayford* (1994) 9 Cal.4th 1, 11-12, 22.)
>
> The asportation element "involves two prongs. First, the defendant must move the victim and this asportation must not be 'merely incidental to the [rape].' [Citations.] Second, the movement must increase 'the risk of harm to the victim over and above that necessarily present in the [rape].' [Citation.] The two are not mutually exclusive, they are interrelated. [Citation.] [¶] For the first prong, the jury considers the distance the defendant moved the victim and the 'scope and nature' of the movement. [Citations.] For the

9

second, it considers whether the movement gave the defendant 'the decreased likelihood of detection' and an 'enhanced opportunity to commit additional crimes.' [Citation.]" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168 (*Shadden* ).)

Defendant argues that because the older sister "voluntarily" went into the backyard the first time, and defendant only pushed her a few feet into the shed that time, her movement was incidental to the first rape. He also argues the distance from the bedroom to the shed was not substantial.

"In determining 'whether the movement is merely incidental to the [underlying] crime ... the jury considers the 'scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.' [Citations.]" (*People v. Martinez* (1999) 20 Cal.4th 225, 233.)

We begin by disagreeing with defendant's characterization of the older sister's movement toward the shed as "voluntary." The record reflects that the sisters were held against their will from the moment they arrived at the house. Just because defendant was able to lure the older sister into the backyard the first time did not make her movement voluntary. Moreover, photographs of the backyard showing the area between the house to the shed were admitted into evidence and are part of the appellate record. While there is no evidence of the measured distance the older sister was moved, our examination of the record convinces us the distance was not trivial or minor. We also conclude the movement was not incidental to the first rape.

(See *Shadden, supra*, 93 Cal.App.4th at p. 169; *People v. Salazar* (1995) 33 Cal.App.4th 341, 347-348 & fn. 8; see *People v. Robertson* (2012) 208 Cal.App.4th 965, 984, 986.) In *Shadden*, the court found that moving the victim nine feet from the front counter to a backroom, which was hidden from open view, was sufficient to support a conviction for kidnapping to commit rape under section 209, subdivision (b). (*Shadden*, at p. 167.) Defendant's reliance on *People v. Hoard* (2002) 103 Cal.App.4th 599 and its criticism of *Salazar* and *Shadden* is misplaced because *Hoard* is inapposite. *Hoard* involved a conviction for aggravated kidnapping in which defendant robbed a store and moved the victims within the store's interior. (*Hoard,* at pp. 601-602; cf. *People v. Corcoran* (2006) 143 Cal.App.4th 272, 279-280 [distinguishing *Hoard*].)

Here, moving the older sister to the back shed enhanced defendant's opportunity to commit crimes and substantially increased the older sister's danger. Defendant lured, and then forced, the older sister from an area where Delaney and the younger sister could see them. He took the older sister to a place where he could tie the door closed and sexually assault her in privacy. On this record, there is no question the older sister suffered increased harm because she was lured and forced into the shed. (*People v. Tuan Van Nguyen* (2000) 22 Cal.4th 872, 885-886 [the increased risk of harm may be either

10

> physical or psychological].)
>
> Substantial evidence supports the kidnapping for the purpose of rape conviction and the kidnapping enhancements.

Hickman, 2018 WL 3198839, at *4-5.

A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011). This inquiry involves two steps. First, this court must review the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. If there are conflicting factual inferences, the federal habeas court must presume the jury resolved the conflicts in favor of the prosecution. Id. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam). Second, this court will "determine whether the evidence at trial, including any evidence of innocence, could allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

Although this court's review is grounded in due process under the Fourteenth Amendment, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005). This Court will look to state law to establish the elements of the offense and then turn to the federal question of whether the state court was objectively unreasonable in concluding that sufficient evidence supported that conviction. See Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

"After AEDPA, we apply the standards of *Jackson* with an additional layer of deference." Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). On direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what

conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Here, as the state court outlined, the jury convicted petitioner of kidnapping to commit rape (California Penal Code section 209(b)(1))) and found true two kidnapping enhancements (California Penal Code sections 667.61(d)(2) & (667.61(e)(1)). (ECF No. 14-2 at 2, 4.) California law defines kidnapping to commit rape as any kidnapping or carrying away of an individual to rape where "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." Cal. Penal Code § 209(b)(1) & (2). The kidnapping enhancement to the rape charge includes a similar provision; "[t]he defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense…." Cal. Penal Code § 667.61(d)(2).

After reviewing the record, this Court concludes that the state court's determination that there was sufficient evidence to prove that the movement was more than incidental and substantially increased the risk to the victim was not contrary to or an unreasonable application of clearly established federal law. A rational trier of fact could find that the movement from the house to the shed was not merely incidental to the rape. As the state court concluded, the victim did not voluntary move from the house to the shed. ECF No. 14-3 at 252-53; Hickman, 2018 WL 3198839, at *4. She was tricked into going outside and was pulled into the shed, which was not a trivial distance from the house. ECF No. 14-3 at 253-54; Hickman, 2018 WL 3198839, at *4. The state court reasonably concluded that the shed substantially increased the risk of harm to the victim. Hickman, 2018 WL 3198839, at *5. It physically separated the victim from her sister,

and in the shed, petitioner locked the door with string, threatened to kill her and her sister, and then raped her. (ECF No. 14-3 at 256-65.) To the extent petitioner claims that there is no physical evidence to corroborate the victim's story, he ignores the record. The sexual assault examiner testified that her medical exam findings were consistent with forceful penetration and the victim's story. (ECF No. 14-4 at 133-147.) This Court recommends denying's petitioner's claim for habeas relief.

C. Claim Three: Challenge to Consecutive Sentences

Lastly, petitioner claims that the trial court erred in finding that rape (count five) and oral copulation (count six) occurred on separate occasions to support consecutive sentences for these counts. (ECF No. 30 at 4-5.) Respondent argues that petitioner fails to state a federal question. (ECF No. 33 at 19.) The state appellate court evaluated petitioner's claim and rejected it. Hickman, 2018 WL 3198839, at *5.

Petitioner challenges the state appellate court's interpretation of California's sentencing law. Federal habeas courts, however, are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. A claim regarding the interpretation of California law is generally not cognizable on federal habeas review. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68; Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.") Here, the state appellate court held that "the trial court did not abuse its discretion in sentencing consecutively because the crimes involved separate acts of violence, a criterion defendant does not challenge." Hickman, 2018 WL 3198839, at *5. The state court's interpretation of state law is binding on a federal habeas court. Richey, 546 U.S. at 76; see generally Oregon v. Ice, 555 U.S. 160, 164 (2009) (holding that the Sixth Amendment does not prohibit a state judge from deciding whether sentences for multiple offenses should run consecutively or concurrently). This Court concludes that petitioner is not entitled to relief on this claim.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 2, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

20/hick2967.hab